[Cite as *Eltayeb v. Akron Nephrology Assoc.*, 2025-Ohio-248.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| BABIKER ELTAYEB, M.D. | C.A. No. 30992 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| AKRON NEPHROLOGY ASSOCIATES, INC. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No. CV-2017-06-2590 |
| Appellant | |

DECISION AND JOURNAL ENTRY

Dated: January 29, 2025

HENSAL, Judge.

**{¶1}** Akron Nephrology Associates, Inc. ("ANA") appeals a judgment of the Summit County Court of Common Pleas that awarded $451,607.00 to Babiker Eltayeb, M.D. and an order that denied its motion for remittitur, denied its motion for new trial, and granted Dr. Eltayeb attorney fees. For the following reasons, this Court affirms.

I.

**{¶2}** Dr. Eltayeb began working for ANA in 1998 and eventually became a shareholder in the company. In March 2017, Dr. Eltayeb let his partners know that he was retiring from the practice. He, thereafter, sought a buyout of his shares under the terms of the shareholders agreement. ANA opposed the buyout because it did not believe Dr. Eltayeb had retired because he went to work in another country. Dr. Eltayeb sued ANA for breach of contract and two of his partners for breach of fiduciary duty. A jury found ANA liable for breach of contract and awarded Dr. Eltayeb $451,607 in damages. The trial court also awarded Dr. Eltayeb his attorney fees, in

accordance with the shareholders agreement, and prejudgment interest. ANA moved for remittitur or, in the alternative, for a new trial of the damages, arguing that the jury's award was not supported by the evidence. The trial court, however, denied its motions. ANA has appealed, assigning four errors.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT DENIED AKRON NEPHROLOGY'S MOTION FOR REMITTITUR AND ALTERNATIVE REQUEST FOR NEW TRIAL WHERE THERE WAS NO COMPETENT, SUBSTANTIAL, AND CREDIBLE EVIDENCE TO SUPPORT THE JURY'S VERDICT OF $451,607.00 ON ELTAYEB'S BREACH OF CONTRACT CLAIM.

{¶3} In its first assignment of error, ANA argues that the trial court should have granted its motion for remittitur or for new trial because the jury's award is not supported by the evidence. It notes that Dr. Eltayeb argued that the retirement buyout price was $702,994, while it argued that the buyout price was $306,830.18. The jury awarded $451,607, however, which ANA argues is not supported by the evidence.

{¶4} Regarding ANA's motion for remittitur, "courts have the inherent authority to order remittiturs to reduce jury awards when they deem the amount to be excessive based on facts found by the jury." *Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 38. "This Court reviews a trial court's decision to deny remittitur for an abuse of discretion." *Jemson v. Falls Village Retirement Community, Ltd.*, 2002-Ohio-4155, ¶ 26 (9th Dist.).

{¶5} Regarding ANA's motion for new trial, Civil Rule 59(A) provides that a new trial may be granted on the grounds of an "[e]rror in the amount of recovery, whether too large or too small" or if "[t]he judgment is not sustained by the weight of the evidence . . . ." Civ.R. 59(A)(5) & (6). If the basis of a motion for new trial "involves a question of law, the de novo standard of

review applies, and when the basis of the motion involves the determination of an issue left to the trial court's discretion, the abuse of discretion standard applies." *Dragway 42, L.L.C. v. Kokosing Constr. Co., Inc.*, 2010-Ohio-4657, ¶ 32 (9th Dist.).

> When considering a Civ.R. 59(A)(6) motion for a new trial, a trial court must weigh the evidence and pass on the credibility of the witnesses. Yet, the trial court assesses the weight and credibility in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred.

*DiDonato v. Roig*, 2024-Ohio-2109, ¶ 18 (9th Dist.), quoting *Windward Ents., Inc. v. Valley City Dev. Group LLC*, 2019-Ohio-3419, ¶ 18 (9th Dist.).

{¶6} "A claimant seeking to recover for breach of contract must show damage as a result of the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144 (9th Dist. 1996). "Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach." *Id*. "As a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort." *Id*., quoting *Rhodes v. Rhodes Indus., Inc.*, 71 Ohio App.3d 797, 808-809 (8th Dist. 1991). "The damages awarded for a breach of contract should place the injured party in as good a position as it would have been in but for the breach." *Id*. "Such compensatory damages, often termed 'expectation damages,' are limited to actual loss, which loss must be established with reasonable certainty." *Id*.

{¶7} The shareholders agreement provided that the purchase price for the shares of a retiring shareholder would be "equal to the average annual compensation of full time Shareholders during the prior three (3) full calendar years . . . from the date of the [retirement] notice . . . [.]" The parties disagreed over the meaning of the term "compensation." According to Dr. Eltayeb,

ANA had two sources of income. First, each of the doctors had a clinical practice consulting with patients at their office or a hospital. Second, the owner of multiple dialysis centers had hired ANA to provide physician services at its centers. Dr. Eltayeb testified that his compensation from ANA consisted of both his income from clinical visits and his share of the income from the dialysis centers. ANA, however, argued that a shareholder's "compensation" only included a doctor's clinical fees.

{¶8} ANA had three shareholders at the time of Dr. Eltayeb's retirement. Dr. Eltayeb averaged the amount he claimed they each received in clinical and dialysis-center fees in 2014, 2015, and 2016, to reach his buyout-entitlement figure of $702,944. ANA, on the other hand, only averaged the shareholders' clinical fees from 2014, 2015, and 2016, to calculate its buyout figure of $306,830.18

{¶9} Based on the evidence submitted, we conclude the jury award of $451,607 cannot be deemed excessive because it was less than Dr. Eltayeb could reasonably argue he was entitled to under the buyout provision of the shareholders agreement. Although there is no clear indication for why the jury settled on $451,607, we also cannot say that the amount is not supported by the weight of the evidence. Dr. Eltayeb presented evidence that would support a damage award up to and including the full amount he requested. We also note that ANA presented a copy of Dr. Eltayeb's employment contract from his new employer. In determining how much Dr. Eltayeb was injured by ANA's breach of contract, the jury may have considered his injury to have been mitigated by his compensation at his new employer, which Dr. Eltayeb testified was about $200,000 a year. Upon review of the record, we conclude that ANA has failed to establish that the trial court improperly exercised its discretion when it denied the motion for remittitur and motion for new trial. ANA's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT FAILED TO SUBMIT TO THE JURY AKRON NEPHROLOGY'S PROPOSED JURY INTERROGATORY NO. 3 (WHICH WOULD HAVE PREVENTED THE ERROR ADDRESS BY ASSIGNMENT OF ERROR NO. 1). IN VIOLATION OF OHIO RULE OF CIVIL PROCEDURE 49(B).

{¶10} In its second assignment of error, ANA argues that the trial court incorrectly refused to submit a jury interrogatory it requested to the jury. Civil Rule 49(B) provides that "[t]he court shall submit written interrogatories to the jury . . . upon request of any party prior to the commencement of argument." "The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law." Civ.R. 49(B).

{¶11} The Ohio Supreme Court has explained that "[t]he purpose of an interrogatory is to 'test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict.'" *Moretz v. Muakassa*, 2013-Ohio-4656, ¶ 79, quoting *Freeman v. Norfolk & W. Ry. Co.*, 69 Ohio St.3d 611, 613 (1994). "When both the content and the form of a proposed interrogatory are proper, Civ.R. 49 imposes a mandatory duty upon the trial court to submit the interrogatory to the jury." *Id*. "A proper interrogatory is designed to lead to 'findings of such a character as will test the correctness of the general verdict returned and enable the court to determine as a matter of law whether such verdict shall stand.'" *Id*., quoting *Freeman* at 613-614. "[T]he trial court retains discretion to reject interrogatories that are inappropriate in form or content . . . [and] may reject a proposed interrogatory that is ambiguous, confusing, redundant, or otherwise legally objectionable." *Freeman* at 613. "The standard under which we review a trial court's decision whether to submit a proposed interrogatory is abuse of discretion." *Id*. at 614.

{¶12} ANA argues that the jury interrogatory it submitted was proper in form and content, which triggered the mandate under Rule 49(B) that the trial court submit it to the jury. The jury

interrogatory it submitted would have required the jury to answer whether a doctor's "compensation" under the shareholders agreement included the dialysis-center fees. Specifically, the proposed interrogatory asked:

> Do you find by a preponderance of the evidence that Dr. Eltayeb's Medical Director Agreement ("MDA") income should be included in the "compensation" used to calculate the purchase price for Dr. Eltayeb's shares under Section 5(a) of the Shareholders Agreement?

Instead, the interrogatories the jury received asked whether ANA breached its contract with Dr. Eltayeb, asked the jury to describe how ANA breached the contract, asked whether the breach caused financial damage to Dr. Eltayeb, and asked the amount of damages it was awarding him.

{¶13} For breach of contract, "the injured party has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform." *Burkett v. Cook*, 2007-Ohio-4652, ¶ 12 (9th Dist.), quoting 1 Restatement of the Law 2d, Contracts, § 347 (1981). Even if the jury found that the dialysis center fees were included in Dr. Eltayeb's compensation under the agreement, that would only be one part of its damages calculation. The proposed interrogatory, therefore, was not "directed to one or more determinative issues" because whether the fees were compensation was only a factor in the damages calculation and not "determinative" of the amount. *See UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.*, 2001-Ohio-8779, ¶ 49 (10th Dist.) ("Determinative issues are 'ultimate issues' that when decided will settle the controversy between the parties."), quoting *Ziegler v. Wendel Poultry Serv., Inc.*, 67 Ohio St.3d 10, 15 (1993). Damage itemizations, such as ANA's jury interrogatory requested, "are not determinative . . . ." *Id*. at ¶ 51. We, therefore, conclude that the trial court did

not exercise its discretion improperly when it declined to submit the proposed interrogatory to the jury. ANA's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT FAILED TO LIMIT THE CONTRACTUAL "PREVAILING PARTY" ATTORNEY FEE AWARD TO FEES INCURRED IN PURSUING THE SINGLE, SEGREGABLE CLAIM ON WHICH ELTAYEB PREVAILED.

{¶14} In its third assignment of error, ANA argues that the trial court should only have awarded Dr. Eltayeb attorney fees associated with his breach of contract claim instead of including fees associated with his failed breach of fiduciary duty claims. ANA notes that the shareholders agreement allows a "prevailing party" to recover their fees, but Dr. Eltayeb only prevailed on his breach of contract claim. It also argues that Dr. Eltayeb was incorrectly awarded fees for time his attorneys spent on claims against other parties under other contracts. Whether a contract provides for an award of attorney fees as well as whether a party is the prevailing party is reviewed by this Court de novo. *Woodside Mgmt. Co. v. Bruex*, 2020-Ohio-4039, ¶ 137 (9th Dist.). Decisions of whether to award attorney fees and how much, however, are within the trial court's discretion. *Id.*

{¶15} Initially, ANA argues that Dr. Eltayeb did not meet his evidentiary burden to establish he was entitled to attorney fees. It argues that he had no written fee agreement with his counsel, he did not submit any fee invoices only time reports, the time reports were not verified as accurately reflecting what he had or would be billed by his attorneys, and there was no evidence to confirm that the charges related to the breach of contract claim.

{¶16} Although a "prevailing party is generally not entitled to recover attorney fees as a part of the costs of litigation[,]" Ohio courts have recognized exceptions if "either (1) a statute or an enforceable contract specifically provides for the losing party to pay attorney fees, or (2) the prevailing party demonstrates bad faith on the part of the losing party." *Vitantonio v. American*

*Constr. Group, LLC*, 2024-Ohio-325, ¶ 9 (9th Dist.). "A prevailing party is generally the party 'in whose favor the decision or verdict is rendered and judgment entered.'" *Moga v. Crawford*, 2008-Ohio-2155, ¶ 6 (9th Dist.), quoting *Hagemeyer v. Sadowski*, 86 Ohio App.3d 563, 566 (6th Dist. 1993). To be a prevailing party "does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who had made a claim against the other, has successfully maintained it." *Id.*, quoting *Lehto v. Sankey*, 2001 WL 735898 (11th Dist. June 29, 2001). "A prevailing party is one that has obtained some relief in the case, even if they did not sustain all of their claims." *Elevation Ents. Ltd. v. NMRD Ltd.*, 2023-Ohio-4433, ¶ 56 (10th Dist.). "[A] contractual provision awarding attorney's fees to a prevailing party is enforceable 'so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.'" *The Cambridge Co., Ltd. v. Telsat, Inc.*, 2008-Ohio-1056, ¶ 18 (9th Dist.), quoting *Nottingdale Homeowners Assn., Inc. v. Darby*, 33 Ohio St.3d 32 (1987), syllabus. The shareholders agreement provided that, if "any party brings any action to enforce any provisions of this Agreement . . . and prevails in such action, such party shall be entitled . . . to collect . . . the reasonable costs and expenses incurred in . . . the prosecution of such action, including but not limited to reasonable attorneys' fees."

{¶17} In support of his request for attorney fees, Dr. Eltayeb presented several charts listing the charges associated with prosecuting his case. Each line item noted the date of the activity, the amount of time spent, the person who performed the activity, the hourly rate charged, the total amount billed for the time, and a narrative of the activity that was performed. At the hearing on attorneys' fees, Dr. Eltayeb's lead counsel testified about his law firm's representation of Dr. Eltayeb. He testified that the charts detailed the legal fees Dr. Eltayeb had incurred. He opined that the fees charged were reasonable and necessary for Dr. Eltayeb to enforce the contract

and that the rates charged were comparable to the rates charged in the local community. He also testified that, because of the counterclaims that ANA brought against Dr. Eltayeb, the facts of his claims could not reasonably be separated. He further testified that, even if other parties had not been sued, because of their involvement in the factual background of the claims, they still would have had to have been subpoenaed and deposed. Upon review of the record, we conclude that Dr. Eltayeb presented sufficient evidence to establish that he was entitled to attorney fees under the shareholders agreement and the amount and reasonableness of those fees.

{¶18} ANA also argues that the trial court's attorney fee award incorrectly included fees incurred by Dr. Eltayeb on non-prevailing claims because the court found that the claims were so inextricably intertwined that the attorneys' time could not be separated. ANA notes that the breach of contract claim was against it but the breach of fiduciary duty claims were against Dr. Eltayeb's two partners. Dr. Eltayeb even admitted that the facts supporting each of his claims did not overlap. Dr. Eltayeb's attorney also admitted that there were separate pleadings prepared regarding the defendants who settled before trial. ANA argues that the trial court's generalized finding that the same people were involved in the claims and that the claims are related to the nephrology practice was insufficient to support its award of all the fees.

{¶19} ANA cites *Weaner & Associates, LLC v. 369 W. First St., LLC*, 2016-Ohio-8077 (2d Dist.), in support of its argument that Dr. Eltayeb could only recover attorney fees related to his successful claim. In *Weaner*, the Second District Court of Appeals quoted language from the Ohio Supreme Court decision *Bittner v. Tri-City Toyota, Inc.*, 58 Ohio St.3d 143 (1991) that "[if] claims can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Id.* at ¶ 29, quoting *Bittner* at 145. *Bittner*, however,

involved claims for breach of contract and for breach of the consumer sales practices act. Unlike in this case where the shareholders agreement allowed Dr. Eltayeb to recover any expenses associated with prosecuting the "action," the plaintiff in *Bittner* was not able to recover attorney fees associated with her breach of contract claims. *Bittner* at 145.

{¶20} Dr. Eltayeb's lead counsel testified that, although some of the documents that were prepared related to other parties, they served a purpose in the case against ANA. In its brief, ANA has not identified any specific line items from Dr. Eltayeb's attorney fee reports that it contends did not relate to prosecuting Dr. Eltayeb's action against ANA. ANA has the burden of affirmatively demonstrating reversible error on appeal. *Loewe v. Loewe*, 2024-Ohio-323, ¶ 24 (9th Dist.). Accordingly, upon review of the record, we cannot say that the trial court exercised its discretion improperly when it determined the amount of the attorney fee award. ANA's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT FAILED TO PROPERLY DETERMINE WHEN PRE-JUDGMENT INTEREST COMMENCES TO RUN AND FAILED TO APPLY THE AGREED CONTRACTUAL INTEREST RATE, BOTH IN VIOLATION OF OHIO REVISED CODE § 1343.03(A) AND THE CONTRACT.

{¶21} In its fourth assignment of error, ANA argues that the trial court incorrectly awarded Dr. Eltayeb pre-judgment interest from the date of his declared retirement from the company in March 2017. According to ANA, under the shareholders agreement, Dr. Eltayeb would have only received a third of his buyout on the date of his retirement, with the remainder to be paid to him 24 months later. It, therefore, was incorrect for the court to award prejudgment interest on the full amount the jury awarded Dr. Eltayeb as if it would have all been payable to him at the start of his retirement. ANA also argues that the interest rate the trial court ordered is different than provided for by the contract.

**{¶22}** Revised Code Section 1343.03(A) provides that, when money becomes due, "the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest . . . ." "When a prevailing party is entitled to prejudgment interest, '[t]he only matter within the court's discretion is the determination of the starting date upon which to begin calculating the prejudgment interest.'" *HB Martin Logistics, Inc. v. Hissong Group, Inc.*, 2023-Ohio-4836, ¶ 34 (9th Dist.), quoting *Magnum Steel & Trading, L.L.C. v. Mink*, 2013-Ohio-2431, ¶ 55 (9th Dist.).

**{¶23}** The shareholders-agreement provisions upon which ANA's argument relies apply to purchases of shares. ANA, however, refused to purchase Dr. Eltayeb's shares. The damages he was awarded at trial were for breach of contract. The shareholders agreement does not contain any language that addresses prejudgment interest following an action for such damages. Accordingly, the trial court correctly determined that Section 1343.03(A)'s "written contract" exception did not apply. ANA's fourth assignment of error is overruled.

III.

**{¶24}** ANA's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


JENNIFER HENSAL
FOR THE COURT


STEVENSON, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

JOHN F. HILL and MELEAH M. SKILLERN, Attorneys at Law, for Appellant.

DONALD W. DAVIS and ALEX J. MCCALLION, Attorneys at Law, for Appellee.